Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5472 | **DATE** | June 21, 2002 |
| **CASE TITLE** | Greco v. LaSalle N.A. Trust and Holiday Inn | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant LaSalle National Trust, N.A.'s motion for summary judgment [ ] is granted. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | JUN 24 2002<br>date docketed | 36 |
| x | Notices MAILED by judge's staff. | 15<br>docketing deputy initials | |
| | Notified counsel by telephone. | date mailed notice | |
| | Docketing to mail notices. | KAM<br>mailing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to __________ | | |

KAM — courtroom deputy's initials

U.S. DISTRICT COURT CLERK
02 JUN 21 PM 4:24
FILED-ED10

Date/time received in central Clerk's Office

(Reserved for use by the Court)

00-5472.021-JCD June 21, 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY GRECO, Administrator of the Estate of JOSEPH GRECO, Deceased, Plaintiff, | ) | |
| v. | ) | No. 00 C 5472 |
| LASALLE N.A. TRUST, N.A., d/b/a HOLIDAY INN-CHICAGO MART PLAZA and HOLIDAY INN, a foreign corporation, Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is defendant LaSalle National Trust, N.A.'s motion for summary judgment. For the reasons explained below, the motion is granted.

**BACKGROUND**

Plaintiff, Jeffrey Greco, is the administrator of the Estate of Joseph Greco, who died on August 7, 1998 as a result of injuries he suffered by falling through a laundry chute at the Holiday Inn Mart Plaza in Chicago. Jeffrey Greco brought this action against the Holiday Inn corporation and LaSalle National Trust, N.A. ("LaSalle"), which owns the Holiday Inn Mart Plaza, alleging that Joseph Greco's death was caused by defendants' negligence in relation to the laundry chute door.



The following relevant facts are taken from the parties' statements of undisputed material facts.[1] On August 6, 1998, Greco traveled to Chicago to attend the wedding of his friend, Joseph Kraft. Greco and Kraft's friends, Michael Dupuis and Mark Gillen, flew to Chicago as well. Kraft picked up Greco, Dupuis, and Gillen at O'Hare Airport that evening.[2] The four men went to the Holiday Inn Mart Plaza (the "Hotel"). Greco, Dupuis, and Gillen checked in; they were assigned to Room 2043 and went up to the room to drop off their luggage.[3] They stayed there for ten to fifteen minutes, and then Kraft drove them to Kraft's apartment. The four men and a few friends or family members walked to a neighborhood bar. They drank beer and played pool.[4]

---

1/ In his Response to LaSalle's Rule 56.1 Statement of Uncontested Material Facts, plaintiff does not respond to every numbered paragraph; he simply denies the single statement that the laundry chute door was locked. Plaintiff does not dispute the remaining statements; therefore, we deem those statements admitted. See Local Rule 56.1.

The relevant facts are derived in large part from the deposition testimony of Michael Dupuis and Mark Gillen.

2/ Greco, Dupuis, and Gillen each came to Chicago on separate flights. Dupuis remembered having two beers at the airport bar while waiting with Kraft and Greco for Gillen to arrive. He remembered that Greco had something to drink at the airport bar, but not what type of beverage or how much Greco drank. When Gillen arrived at the airport bar, he noticed Dupuis and Greco each drinking a beer.

3/ At this time, Dupuis did not notice the door to the laundry chute in the hallway on the twentieth floor.

4/ Dupuis remembered having two cans of beer at Kraft's apartment and one beer and one shot of liquor at the neighborhood bar. He did not recall if Greco and Dupuis were drinking, but stated that the group in general was drinking beer. Gillen remembered having two to three beers at the bar. He also recalled that Greco was drinking beer at the bar and that some people in the group had shots of liquor also.

Approximately two to two and a half hours later, Greco, Dupuis, and Gillen left the bar in a taxi. They asked the taxi driver to stop at a hamburger stand, where they got food. Upon returning to the Hotel, the taxi driver had difficulty finding the Hotel's entrance, so he dropped off the three men somewhere near the Hotel. They sat on a curb and ate their food. Gillen then got up and walked around, trying to find the Hotel's entrance. He walked about 100 feet and realized where they were. Gillen called to Greco and Dupuis, who did not respond, and decided to walk to the Hotel by himself. He went to the front desk to ask what their room number was, took the elevator to the twentieth floor, bought a Coke from the vending machine on the twentieth floor, and returned to Room 2043. Gillen lay down on the bed and turned on the television. It was about 3:00 a.m.

In the meantime, Dupuis and Greco had been sitting on the curb eating their food for about ten to fifteen minutes. Then they walked through the Hotel's parking garage and into the Hotel. They took the elevator to the twentieth floor and walked down the hallway to Room 2043. Dupuis was ten to thirty feet ahead of Greco. Dupuis and Greco had been "goofing around,"[5] and when Dupuis was approximately forty to fifty feet away from the door to

[5] Dupuis stated that he was not "drunk" but that he was "buzzed," and he did not know if Greco was "buzzed." He also stated, "Joe and I goofed around whether or not we had had something to drink or not." (Defendant's Rule 56.1 Statement of Uncontested Material Facts, Ex. D, Deposition of Michael Dupuis, at 54.)

their room, he kicked over a room service tray. He looked back and saw Greco fifteen to twenty feet behind him.

When Dupuis got to Room 2043, he noticed that Gillen had left the door slightly open for them. Dupuis entered the room and saw Gillen lying on the bed. Gillen, who had begun to doze off, woke up and asked where Greco was, to which Dupuis responded that Greco was right behind him. Gillen then fell back to sleep, and Dupuis turned to look for Greco. He stepped back out of the room and into the hallway, and saw Greco inside the laundry chute. Greco was balancing on the edge of the chute on his abdomen (at his belt line); the lower half of his body was in the chute, and the upper half of his body was pointing straight out into the hallway, parallel to the floor. Dupuis headed down the hallway for Greco; he believed that Greco had climbed into the chute, "goofing around."

Once Dupuis got within eight to ten feet of Greco, Greco had slipped down into the chute to where the edge of it was underneath his arms. Dupuis grabbed Greco by the shoulders to help him out of the chute; he also tried to go over Greco's back and grab his belt, but he could not reach it. Greco then slipped to the point where he was holding on to the edge with his hands. He was able to hang on for no more than five to ten seconds and then fell down the chute. Dupuis then went back to the room and woke Gillen by pounding on the door. Gillen opened the door, and Dupuis told him

that Greco had fallen down the laundry chute.[6] Greco's fall down the chute was fatal.

Jose Prado, a security officer at the Hotel, was working from 11:00 p.m. on August 6, 1998 until 6:00 a.m. on August 7, 1998. He inspected the laundry and garbage chute doors on floors fourteen through twenty-three at midnight and again at 2:00 a.m. At both times, all doors to the laundry and garbage chutes were closed and locked. Felix Fernandes, the General Manager of the Hotel, is responsible for keeping files, reports, and records of occurrences, accidents, and disputes involving Hotel guests. He attests that prior to Joseph Greco's accident, no guest had ever climbed into or fallen down the laundry chute at the Hotel, and no guest had ever complained about or given notice to the Hotel about an unlocked or open laundry chute door. The photographs attached as exhibits to the deposition of Michael Dupuis show that the door to the laundry chute was marked "SOILED LINEN."

On July 28, 2000, plaintiff brought this negligence action in the Circuit Court of Cook County, Illinois. Defendants then removed the action to this court, asserting the existence of federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Thereafter, LaSalle brought a third-party action against Gillen and DuPuis, seeking contribution based on tort theories of willful and

---

[6] Gillen did not recall noticing the laundry chute prior to this time.

wanton conduct, assault, and battery. LaSalle later dismissed the third-party complaint as to Gillen.

LaSalle now moves for summary judgment. The parties agree that Illinois law governs this diversity case.

**DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

To succeed on his negligence claim, plaintiff must prove the existence of a duty owed to him by LaSalle, a breach of that duty, and an injury proximately resulting from the breach. See Ziemba v. Mierzwa, 566 N.E.2d 1365, 1366 (Ill. 1991). Whether a duty of care exists is a question of law for the court. See Ward v. K Mart Corp., 554 N.E.2d 223, 226 (Ill. 1990). In determining the existence of a duty, the court considers whether defendant should have reasonably foreseen plaintiff's injury, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. See Ralls v. Village of Glendale Heights, 598 N.E.2d 337, 344 (Ill. App. Ct. 1992).

Illinois has adopted the rules set forth in the Restatement (Second) of Torts § 343A regarding the duty of care owed by possessors of land (including innkeepers) to their invitees (including guests). See Ward, 554 N.E.2d at 230-232. Section 343A(1) provides as follows:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

The word "known" denotes "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." Restatement (Second) of Torts § 343A cmt. b (1965). "Obvious" means that "both the condition and the risk are

apparent to and would be recognized by a reasonable man, in the position of the [invitee], exercising ordinary perception, intelligence, and judgment." Id.

First, we will address the issue of whether the laundry chute door was locked. Jose Prado, a Hotel security guard, attests that he checked the door approximately two hours before the incident and that the door was locked. The only evidence supporting an inference that the door was unlocked was the fact that Greco was able to open the door. We do not believe, however, that this creates an issue of material fact. We will assume that the laundry chute door was unlocked; it does not change our analysis of the case.

We agree with LaSalle that, under Restatement (Second) of Torts § 343A, it had no duty to take any action to prevent this accident or warn Greco or otherwise protect him from the danger presented by the laundry chute. As an initial matter, there was nothing inherently dangerous about the chute. More importantly, though, it was not unreasonably dangerous under the facts of this case. Plaintiff concedes that Greco climbed into the laundry chute; he did not fall in.[7] The danger posed by the chute was known and obvious. Greco had a responsibility for his own safety and should be held to be aware of the obvious danger of climbing

[7] Given the size of the laundry chute and its position on the wall, it is virtually impossible for anyone to "fall" into the chute.

into a laundry chute. Plaintiff's argument that "people fail to appreciate the potential harm that could ensue from descending into a chute" because they see movies that depict a chute as merely "one big slide leading to the laundry room" is absurd. (Plaintiff's Response at 8.) A reasonable person "exercising ordinary perception, intelligence, and judgment," Restatement (Second) of Torts § 343A, knows that movies do not always accurately reflect real life, and knows that entering a laundry chute, particularly from a high floor, could lead to a serious injury or death.

The exception to the "open and obvious" rule--namely, that the possessor of land owes an invitee a duty of care when the possessor should anticipate the harm despite knowledge or obviousness of the condition giving rise to the injury--does not apply. The exception is based on the following rationale: either the defendant in the exercise of reasonable care should have anticipated that the invitee would fail to notice the condition or be distracted by it, or the invitee's reasonable care under the circumstances would not remove the risk in spite of the foreseeable danger. See Ward, 554 N.E.2d at 232-34; Restatement (Second) of Torts § 343A cmt. f. "Distraction" is not a relevant consideration here because the evidence is that Greco voluntarily climbed into the chute; he did not fall into it. Furthermore, there is no indication that defendant should have expected that Greco could not have avoided injury by acting carefully. Defendant was entitled to expect that

Greco would take responsibility to protect himself.[8] "Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition." Ward, 554 N.E.2d at 230. The laundry chute is an example of this type of condition.

Plaintiff contends that "it was foreseeable that one of [the Hotel's] patrons would fall down its laundry chute, particularly if he was "buzzed" at approximately 3:15 in the morning." (Plaintiff's Response at 6.) First, there is no evidence that Greco was "buzzed." Dupuis testified that he himself was buzzed, but Dupuis and Gillen both testified that they did not know whether Greco was "buzzed" or drunk or otherwise affected by alcohol. But even if Greco had been intoxicated, there is no authority for taking a "quantum leap" and "expand[ing] the duty owed to an intoxicated person." Estate of Ruppel v. Hyeon Jin, Inc., 650 N.E.2d 645, 646 (Ill. App. Ct. 1995) (innkeeper did not owe duty to warn intoxicated guest of danger posed by stairs guest needed to ascend to return to his room or to assist guest in ascending stairs). Plaintiff's argument that "it is not uncommon" for the Hotel to "expect its patrons to return thereto somewhat

---

[8] As set forth supra, there is no evidence that any Hotel guest ever climbed into a laundry chute or even opened a laundry chute door prior to this incident.

intoxicated" does not lead to the conclusion that any heightened duty exists. (Plaintiff's Response at 6.)

Plaintiff suggests that because Greco and defendant had the special relationship of innkeeper-guest, defendant owed Greco a "higher" duty of care. (Plaintiff's Response at 6.) However, the special relationship doctrine exists under very limited circumstances; innkeepers have a duty to exercise ordinary care in protecting their guests from the criminal or tortious acts of third parties. See Estate of Ruppel, 650 N.E.2d at 647. Plaintiff has failed to allege a duty premised upon the criminal or tortious acts of a third party, so the special relationship doctrine does not apply.

Plaintiff also argues that the Hotel should have posted a sign that said "LAUNDRY CHUTE--DO NOT CLIMB IN." (Plaintiff's Response at 3, 6.) The chute was marked "SOILED LINEN"; there is no basis for concluding that Greco believed it to anything other than a laundry chute. Greco did not exercise reasonable care for his own safety, and a sign warning him not to climb into the chute would have been of little or no assistance. In any event, because we have found that LaSalle breached no duty regarding the laundry chute, we also find that there was no duty to warn.

While the death of Joseph Greco was tragic, it was not reasonably foreseeable by LaSalle. Defendant breached no duty of care in regard to the occurrence and therefore was not negligent. Accordingly, defendant LaSalle is entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, defendant LaSalle National Trust, N.A.'s motion for summary judgment is granted.

Date: June 21, 2002

ENTER:

John F. Grady, United States District Judge